**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nicholas Lopez, | Case No. 2:24-cv-01021-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Motion to Bifurcate** |
| The Sherwin-Williams Company dba Sherwin Williams Company aka Sherwin Williams; Jesus Mendez, individually, | |
| Defendants | ECF Nos. 62, 63 |

This is a vehicle-accident case in which motorcyclist Nicholas Lopez claims that Jesus Mendez, who was driving a car provided by his employer Sherwin-Williams, violated traffic laws and his duty of due care and collided into Lopez's Harley-Davidson, causing him to suffer serious injuries. After three extensions, discovery has closed, and the defendants now move for summary judgment on the vast majority of the issues in this case. The plaintiff concedes that there is no evidence to support his negligent hiring, retention, or entrustment theories, along with several negligence per se allegations, and the record fails to support his negligent training or supervision theories, so I grant summary judgment on those claims. But the vastly conflicting accounts of the accident from Lopez and Mendez's depositions create genuine issues of material fact that preclude summary judgment on the remaining claims. So this case proceeds to a single, non-bifurcated trial on some of Lopez's negligence theories against Mendez and his respondeat superior theory against Sherwin-Williams only—after a mandatory settlement conference with the magistrate judge.

**Background**

Sherwin-Williams employee Mendez was driving an employer-issued Chevy Malibu and Lopez was on his Harley Davidson motorcycle when the two collided in the intersection of Wigwam Parkway and Pecos Road on May 3, 2022. Mendez was trying to make a left turn from Wigwam onto Pecos. Lopez was traveling straight on Wigwam and intending to go through the light. Sherwin-Williams concedes that Mendez was acting in the course and scope of his job duties when the accident happened.[1]

Lopez blames Mendez for the collision and claims that he suffered "permanent and disabling" injuries as a result of it.[2] He sues Mendez for negligence and negligence per se and seeks to hold Sherwin-Williams vicariously liable for those torts, and he asserts additional claims against Sherwin-Williams directly for negligent entrustment of the vehicle to Mendez and for the negligent hiring, training, supervision, and retention of him as an employee.[3]

Mendez and Sherwin-Williams move for summary judgment based on three assertions:

(1)    Lopez's own fault for the accident exceeds Mendez's;

(2)    There's no evidence that Mendez violated the laws that underlie Lopez's negligence per se claim or the statutes and code provisions he relies on don't apply to these facts; and

(3)    There's no evidence to support the negligent entrustment, hiring, training, supervision, and retention claims against Sherwin-Williams directly.

---

[1] ECF No. 62 at 15 (wherein Sherwin-Williams concedes that "Mendez was operating his vehicle within the course and scope of his employment with Sherwin-Williams," so "it is vicariously liable for any negligence established against Mendez").

[2] ECF No. 1-1 at 13.

[3] *See generally id.*

2

Lopez "concedes that Defendant Sherwin-Williams properly receives summary judgment as to negligent hiring, negligent retention, and negligent entrustment,"[4] along with about half of his negligence per se theories.  But he argues that the evidence creates genuine issues of material fact that prevent summary judgment on the remaining claims and, if not, the court should delay or deny summary judgment under Federal Rule of Civil Procedure (FRCP) 56(d) so he can finish the deposition of Sherwin-Williams's FRCP 30(b)(6) witness.[5]

**Analysis**

**A.      The plaintiff cannot demonstrate the diligence required for Rule 56(d) relief.**

Before reaching the merits of the summary-judgment issues, I first address Lopez's assertion that summary judgment should be delayed or denied under FRCP 56(d) because "the magistrate judge . . . arbitrarily and capriciously denied" the plaintiff "his ability to conduct discovery necessary to respond to this motion."[6]  The rule "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence"[7] "to justify [their] opposition."[8]  The Ninth Circuit has repeatedly held that "[t]he failure to conduct discovery diligently is grounds for the denial of" such a motion.[9]

The allegedly offending magistrate-judge order on which Lopez's Rule 56(d) argument is based is the September 4, 2025, order denying the parties' fourth stipulation to extend the

---

[4] ECF No. 70 at 19.

[5] *Id*. at 20.

[6] *Id*. at 2 (cleaned up).

[7] *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003) (decided under the former rule FRCP 56(f)).

[8] Fed. R. Civ. P. 56(d).

[9] *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (collecting cases).

discovery deadline.[10]  As that order explains, discovery had already "been open for 455 days, more than 2.5 times the default discovery period," and the court had "found on more than one occasion that the parties ha[d] failed to diligently conduct discovery."[11]  So when granting the third discovery extension, the magistrate judge made it clear that the extension was the "final" extension she would grant and that the discovery cutoff given was "a firm discovery cutoff and no further extensions w[ould] be granted, so the parties [would] fail at their own peril to get discovery completed by the" extended cutoff date of September 5, 2025.[12]

The parties ignored that warning and filed a stipulation on September 3, 2025, to further extend the discovery period by another 45 days.[13]  In it, they explain that issues came up during the deposition of Sherwin-Williams's person most knowledgeable, conducted just six days before the thrice extended and "final" discovery cutoff.[14]  The magistrate judge was not sympathetic.  She found that the parties' delay in waiting until the eve of the final discovery cutoff date to conduct the deposition of this allegedly crucial witness was just the latest demonstration of a habitual lack of diligence, so she denied the fourth extension.[15]

Local Rule IB 3-1 establishes the process for challenging a magistrate judge's discovery order.  "Any party wishing to object to the magistrate judge's order on a pretrial matter must file and serve specific written objections" within "14 days after service of the order."[16]  Lopez did

---

[10] *See* ECF No. 58 (stipulation) and ECF No. 59 (order denying it).

[11] *Id*. at 1.

[12] ECF No. 47 at 4.

[13] ECF No. 58.

[14] *See generally id.*

[15] ECF No. 59 at 3.

[16] L.R. IB 3-1(a).

not do that. Instead, his counsel waited 53 days to first complain about this ruling in the opposition to the defendants' motion for partial summary judgment.[17] I find that Lopez had the opportunity to address this discovery issue before summary-judgment briefing but failed to exercise—and thus waived—that right.

Even if Lopez had timely raised this objection, I would have overruled it because the magistrate judge's assessment that diligence had not been demonstrated was spot on. The parties represented way back in February 2025 that plaintiff's counsel was "preparing proposed topics" for Sherwin-Williams's FRCP 30(b)(6) witness and would be conferring to schedule that deposition.[18] But they didn't get that deposition on schedule until six months later (and six days before the second-extended discovery cutoff date), and learned in late July that the witness had a medical-scheduling conflict.[19] Referencing a history of "crisis . . . of plaintiff's creation," the magistrate judge was skeptical of the plaintiff's diligence then.[20] But "[i]n a final effort to allow this case to be resolved on its merits," she granted a third and "<u>final</u> extension."[21] She warned that "[t]his is a firm discovery cutoff and no further extensions will be granted, so the parties fail at their own peril to get discovery completed by the" new cutoff of September 5, 2025.[22] Still, the 30(b)(6) deposition didn't start until just days before that "firm" and "final" extended deadline. So when problems arose, there was—expectedly—no time to cure them. That, again,

---

[17] ECF No. 70 at 2, 20. While Lopez specifically objects to the denial of this fourth stipulated discovery extension, he also complains of unspecified "unduly prejudicial rulings from the" magistrate judge. *Id*. at 2. The record is devoid of proper or timely objections to any magistrate-judge discovery ruling in this case.

[18] *See* ECF No. 24 at 3.

[19] ECF No. 41 at 4.

[20] ECF No. 47 at 3 (cleaned up).

[21] *Id*. at 4.

[22] *Id*.

was a crisis of the plaintiff's creation. It did not warrant a fourth extension of the discovery cutoff date, and it does not merit delay or denial of summary judgment. So I deny Lopez's FRCP 56(d) request.

**B.      The record does not support the negligence claims pled directly against Sherwin-Williams.**

Lopez's second through fifth causes of action place the blame for this collision on Sherwin-Williams for negligently hiring, training, supervising, and retaining Mendez and negligently entrusting this work vehicle to him.[23] In their response to defendants' summary-judgment motion, Lopez concedes that summary judgment is appropriate on his hiring, retention, and entrustment theories, so I grant summary judgment on those claims.[24] But he contends that his claims for negligent training and supervision are supported by the fact that "Mendez expressly testified that he received two documents [that] trained him on expected practices of Defendant Sherwin-Williams as to operating the company vehicle and abiding by laws and the rules of the road. He failed to do so."[25] Lopez suggests that "[t]his raises questions as to the propriety both of the training he received, his supervision, and the conduct imputed to Defendant Sherwin-Williams under these theories."[26]

But the notion that the reason Mendez may have violated a traffic law was that he was negligently trained or supervised is not a reasonable inference; it is just speculation. And speculation cannot defeat a properly supported motion for summary judgment like this one. So I find that there are no genuine issues of fact to support Lopez's negligent training and supervision

---

[23] ECF No. 1-1 at 15–18.

[24] ECF No. 70 at 19–20.

[25] *Id*. at 20.

[26] *Id*.

theories, and the defendants are entitled to summary judgment on the second through fifth causes of action.

### C. Genuine disputes of material fact preclude summary judgment on Lopez's non-abandoned negligence, negligence per se, and vicarious-liability theories.

Lopez lumps three legal theories into his remaining first cause of action, alleging that Mendez was garden-variety negligent by failing to operate his vehicle in a reasonable and safe manner, Mendez's driving constitutes negligence per se because it violated about a dozen statutes and codes designed to protect people like Lopez, and Sherwin-Williams is vicariously liable for Mendez's negligence because he was working at the time of the collision.[27] The defendants move for summary judgment on the negligence claim by arguing that the record establishes that Lopez's own negligence was comparatively superior to Mendez's because Lopez was speeding and ran the red light. As to the negligence per se claim, they contend that the provisions on which it is based either don't apply to the facts of this case or are not satisfied by the record evidence.

#### 1. The defendants sufficiently pled a comparative-negligence affirmative defense.

Lopez first argues that the defendants can't now make a comparative-negligence argument because they didn't plead that affirmative defense.[28] It's true that their answers do not contain the phrase "comparative negligence." But they do put the plaintiff on notice that they are alleging that the plaintiff's damages were caused by his own conduct. Both Mendez's and Sherwin-Williams's first affirmative defense reads:

> Plaintiff's alleged damages, which are denied, were caused in whole or in part by Plaintiff's own culpable conduct, intentional acts, contributory negligence, failure to mitigate, assumption of

---

[27] ECF No. 1-1 at 13–14.

[28] ECF No. 70 at 12.

risk, or failure to act as a reasonably prudent person under the same or similar circumstances.[29]

"Under Nevada's comparative negligence statute, NRS 41.141, a plaintiff may recover for negligently caused injuries only if his or her negligence does not exceed the negligence of the defendant."[30]  I find that the broad language of the defendants' first affirmative defenses put the plaintiff on fair notice that they would take the position that Lopez's own negligence exceeded Mendez's as Nevada's comparative-negligence statute contemplates.[31]  So the defendants' failure to explicitly use the term "comparative negligence" does not preclude them from making such an argument now.

### 2.     *The plaintiff concedes that summary judgment is warranted on some negligence per se theories.*

Of the nearly one dozen statutes and codes that the plaintiff alleges Mendez violated,[32] he concedes in his opposition that summary judgment on the alleged violations of NRS 484B.250, NRS 484B.257, Clark County Municipal Code (CCMC) 14.32.070, and CCMC 14.32.100 is merited.[33]  So I grant summary judgment on the portion of the first claim for relief that alleges violations of these provisions.

---

[29] ECF No. 5 at 8; ECF No. 6 at 7.

[30] *State v. Eaton*, 710 P.2d 1370, 1377 (Nev. 1985), *overruled on other grounds by State ex rel. Dep't of Transp. v. Hill*, 963 P.2d 480 (Nev. 1998).

[31] To the extent that the plaintiff argues that the defendants were required to expressly plead "avoidance" of negligence per se, I find that their broadly worded first affirmative defense, along with their denials of the plaintiff's allegations supporting that claim, sufficiently do so.

[32] *See* ECF No. 1-1 at ¶ 22.

[33] ECF No. 70 at 17–19.

### 3.    *All remaining theories in the first cause of action present genuine issues of material fact that preclude summary judgment.*

To grant summary judgment on the rest of the theories and claims in the first cause of action, I would have to accept the defendants' characterization of the record: that the collision happened more because Plaintiff Lopez was speeding and ran the red light[34] than because Defendant Mendez broke a traffic law or violated his duty of care. While the weight of the evidence may support that version of the story, the record does not eliminate all genuine and material factual issues.

As the defendants explain, the dash cam video from a nearby car that recorded the collision can be interpreted to show that Mendez entered the intersection while his light was yellow and that Lopez's traffic light was red by the time he later entered it.[35] And even the plaintiff's own expert testified at deposition that Lopez "entered the intersection on a solid red traffic light."[36]

But Lopez did not adopt that version of events at his deposition. He maintained that, from his understanding, the light was green:

> Q:    As we sit here today, what is your understanding of what the traffic signal color was when you entered the intersection?
>
> A:    From my understanding—from my understanding, I had a green light, and that's why I decided to go through the intersection, and—and from my experience.[37]

---

[34] ECF No. 62 at 9 ("There is no genuine issue of material fact that Plaintiff ran a red light and was speeding at the time of the accident. . . .").

[35] *Id.* (citing ECF No. 62-5).

[36] ECF No 62-6 at 67–68 (Deposition of Richard Tusko).

[37] ECF No. 71-5 at 45–46 (Deposition of Nicholas Lopez).

The defendants point out that Lopez's testimony wasn't unequivocal because he also said that he'd learned from his lawyer that the light was actually red and he also said that he wasn't going to profess that the light was green when he entered.[38]  But what Lopez actually said was that he couldn't say for sure whether he looked at the light at the moment he entered the intersection because he "was looking through the intersection at that point, just making sure [he] was going to be safe when [he] went through it . . . ."[39]  But when he looked at the light "within just a couple feet from before [he] entered the intersection.  Well, maybe—maybe more than a couple . . . but . . . [what] felt like a reasonable amount of time or distance that [he] saw green. . . ."[40]

As to the question of who entered the intersection first, Lopez testified that the intersection was clear when he entered it:

> This is one of those things that's always plagued my mind, if you will, with this incident, is that when I assessed the intersection, it was clear.  So when I proceeded through, it almost felt like from what I remember, [Mendez] sped up or something.
>
> I'm not saying he did.  I'm not—I'm not saying like that at all or anything, bit it felt that way because I'm—I'm going through, it's clear, and then by the time I saw him, it was just too late.  It was like a split second, I'm making impact, and there's no escape for me.[41]

He elaborated:

> Q:    Where were you when you first saw the other vehicle?
>
> A:    Probably as I—like as I was entering—like not as I was entering, as I was fully entered into the intersection, and then that's when I first saw, and then he's just all of a sudden in front of me.

---

[38] ECF No. 73 at 6–7.

[39] ECF No. 71-5 at 45.

[40] *Id.*

[41] *Id.* at 46.

10

Like I want to make it known, like I didn't see him. I didn't see him in—in the intersection before I crossed it. I saw him when I was at like what they call, I believe, the point of no return, is when all of a sudden he's in front of me.

Q:      Okay. Did you apply any brakes on your motorcycle?

A:      I had no time to, no. Yeah, like—like I said, I—it's one minute I'm in a, what I thought, what I saw was a clear intersection, and next thing I know, I'm making impact with his car. I—I had no time to react whatsoever, yeah.[42]

If the jury finds Lopez credible and believes his version of these events, and viewing this evidence in the light most favorable to non-movant Lopez, a factfinder could conclude that Lopez didn't run a red light and that Mendez was the at-fault driver. So on this record I cannot conclude that the defendants are entitled to judgment as a matter of law on the remainder of Lopez's first claim for relief based on their contributory negligence defense or any other liability argument. This case thus proceeds to trial on Lopez's negligence claim against Mendez; his negligence per se claim based on violations of NRS §§ 484B.253, 484B.307, and 484B.310 and CCMC §§ 14.12.02, 14.12.00, and 14.32.080; and Sherwin-Williams's vicarious liability for those torts. But first, I order the parties to a settlement conference with the magistrate judge. Their obligation to file a proposed joint pretrial order is stayed until 10 days after that settlement conference.

**D.      The request for a bifurcated trial is denied.**

In a separate motion, the defendants ask me to bifurcate the trial of this case into separate trials on liability and damages, arguing that a finding that the defendants are not liable for the collision would cut the trial short and save everyone the time and effort of putting on a damages

---

[42] *Id*. at 46–47.

case.[43]  The plaintiff opposes the request, arguing that his liability case is stronger than the defendants would like to believe, and he should not have to take the stand and re-live the details of this terrible crash twice, just for the possibility of saving time.[44]

Federal Rule of Civil Procedure 42(b) authorizes courts to bifurcate a trial when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice.  Bifurcation is appropriate to, for example, "avoid a difficult question by first dealing with an easier, dispositive issue or to avoid the risk of prejudice."[45]  District courts have broad discretion over whether to bifurcate issues for trial.

Applying these principles, I find that splitting this trial is not warranted.  While bifurcation would provide the possibility that the trial would be shortened by a finding of no liability on the part of the defendants, the odds of that happening are anyone's guess.  And there is nothing special or unusual about this case that justifies bifurcation.  So I deny the defendants' motion to bifurcate trial.  If the parties don't resolve this case at the mandatory settlement conference, it will proceed to a single trial on all remaining issues.

<strong>Conclusion</strong>

IT IS THEREFORE ORDERED that **the defendants' motion for summary judgment [ECF No. 62] is GRANTED in part and DENIED in part.  This case proceeds to trial only on the portions of the first claim for relief** that consist of Lopez's negligence claim against Mendez; his negligence per se claim based on violations of NRS §§ 484B.253, 484B.307, and 484B.310 and CCMC §§ 14.12.02, 14.12.00, and 14.32.080; and Sherwin-Williams's vicarious

---

[43] ECF No. 63.

[44] ECF No. 68.

[45] *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) (internal citation omitted).

liability for those torts.  Summary judgment is granted in favor of the defendants and against the plaintiff on all other claims and theories.

IT IS FURTHER ORDERED that the defendants' motion to bifurcate trial **[ECF No. 63]** **is DENIED.**

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.**  The parties' obligation to file a proposed joint pretrial order is stayed until 10 days after the settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
July 8, 2026

13